## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DAYS INNS WORLDWIDE INC., *a Delaware Corporation*,<br><br>Plaintiff,<br><br>v.<br><br>MAJOR RESORTS, LLC, *a Florida Limited Liability Company*; JITENDRA R. PATEL, *an individual*,<br><br>Defendants. | Civil Action No. 23-00945 (JXN) (LDW)<br><br>**OPINION** |

**NEALS**, District Judge

This matter comes before the Court on Plaintiff Days Inns Worldwide, Inc.'s ("DIW" or "Plaintiff") judgment against Defendants Major Resorts, LLC ("Major Resorts") and Jitendra R. Patel ("Patel") (collectively "Defendants") pursuant to the Federal Rules of Civil Procedure 55(b) (ECF No. 13.) The Court has carefully considered Plaintiff's submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons stated herein, Plaintiff's motion for default judgment (ECF No. 13) is **GRANTED**.

## I.     **BACKGROUND**[1]

On or about March 31, 2005, DIW entered into a license agreement (the "License Agreement") with Major Resorts to operate a 251-room Days Inn® guest lodging facility located at 5858 International Drive, Orlando, Florida 32819, designated as Site No. 09575-85437-06 (the

---

[1] The facts are derived from the Complaint (*see* Complaint, ECF No. 1) which the Court accepts as true for purposes of this motion for default judgment. *See Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624 (JBS/JS), 2011 U.S. Dist. LEXIS 115142, *4 (D.N.J. Oct. 5, 2011).

"Facility") for a fifteen-year term.[2] (Compl. ¶¶ 9, 10, ECF No. 1; *id*., Ex. A.) Pursuant to Sections 7, 18.1, and Schedule C of the License Agreement, Major Resorts was required to make certain periodic payments to DIW for royalties, system assessments, taxes, interest, and other fees (collectively "Recurring Fees"). (*Id.* ¶ 11; Ex. A.) Additionally, Section 7.3 of the License Agreement provides that Major Resorts agreed that interest is payable "on any past due amount payable to [DIW] under this [License] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." (*Id* ¶ 12; Ex. A.) Pursuant to section 11.2 of the License Agreement, DIW could terminate the License Agreement, with notice to Major Resorts, for various reasons, including Major Resorts' (a) failure to operate the Facility as a "Days Inn" and/or (b) loss of possession or the right to possession of the Facility. (*Id.* ¶ 15.) Under section 12.1 of the License Agreement, Major Resorts agreed that, in the event of a termination of the License Agreement pursuant to section 11.2, it would pay liquidated damages to DIW in accordance with a formula specified in the License Agreement. (*Id.* ¶ 16.) Section 12.1 of the License Agreement specifically set liquidated damages for the Facility at "an amount equal to the sum of accrued Royalties and Basic Service Charges during the immediately preceding 24 full calendar months (or the number of months remaining in the unexpired Term (the "Ending Period") at the date of termination, whichever is less)." (*Id.* ¶ 17; Ex. A.) Under 17.4 of the License Agreement, Major Resorts agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [License] Agreement or collect amounts owed under this [License] Agreement." (*Id.* ¶ 18.) Patel provided DIW with a guaranty ("Guaranty") of Major Resorts' obligations under the License Agreement. (*Id.* ¶ 19; Ex. C.) Pursuant to the terms of the Guaranty,

---

[2] The parties executed an amendment dated March 25 2020, which extended the term of the License Agreement to expire on January 1, 2021. (Compl., Ex. B.)

Patel agreed, among other things, that upon a default under the License Agreement, he would "immediately make each payment and perform or cause [Major Resorts] to perform, each unpaid or unperformed obligation of [Major Resorts] under the [License] Agreement." (*Id.* ¶¶ 20, 23; Ex. D.)

According to Plaintiff's Complaint, on or about October 1, 2020, Major Resorts unilaterally terminated the License Agreement by transferring the Facility to a third party without prior consent from DIW. (*Id.* ¶ 22.) By letter dated December 1, 2020, DIW acknowledged Major Resort's unilateral termination of the License Agreement, effective December 1, 2020, and advised Major Resorts that it was required to pay DIW "liquidated damages of $18,832.25 as specified in Section 12.1 of the [License] Agreement" and "$47,159.40 in Recurring Fees" as of the Termination Date. (*Id.* ¶ 23; Ex. D.) To date, Defendants have failed to pay the outstanding amounts due and owing to DIW under the terms of the License Agreement and Guaranty.

On February 15, 2023, Plaintiff filed a six-count Complaint against Major Resorts and Patel, alleging breach of contract and unjust enrichment, seeking damages against Patel for Major Resorts' breach, pursuant to the Guaranty. (*Id.* ¶ 24-49.) Upon the failure of Defendants to timely file a responsive pleading, on April 25, 2023, Plaintiff filed a request for default against Defendants pursuant to Federal Rule of Civil Procedure 55(a). (*See* ECF No. 8.) Default was entered against Defendants on that same date.

On July 14, 2023, DIW filed the instant motion for default judgment against Defendants. (ECF No. 13.) Defendants have failed to file any responsive pleading or otherwise appear in this action and have not requested any extension of time to respond. This matter is now ripe for a decision.

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 55 authorizes a district court to enter a default judgment against a defendant who has been properly served and has failed to answer or respond to the pleadings. *See* Fed. R. Civ. P. 55. In determining whether an entry of default judgment is proper, the Court must first address the threshold issue of whether it has both subject matter and personal jurisdiction over the parties. *See Prudential Ins. Co. of Am. v. Bramlett*, No. 08-119 (GEB), 2010 U.S. Dist. LEXIS 66759, at *4 (D.N.J. July 6, 2010). Once jurisdiction has been established, the Court must then determine (1) whether there is sufficient proof of service on defendants; (2) whether a sufficient cause of action was stated; and (3) whether default judgment is proper." *See Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008); *see also Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137 (JBS)(KMW), 2012 U.S. Dist. LEXIS 102652, at *5 (D.N.J. July 24, 2012). Finally, if the Court determines default judgment is warranted, the Court must then make a determination as to the amount of damages a plaintiff is entitled to receive. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). Notably, in deciding a motion for default judgment, "the factual allegations in a Complaint, other than those as to damages, are treated as conceded by the defendant." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005).

### III.   DISCUSSION

#### A.  The Court Has Jurisdiction Over the Defendants.

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045 (ES), 2015 U.S. Dist. LEXIS 7054, at *3 (D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 05-3452 (JAG), 2008 U.S. Dist. LEXIS 63600, at *25 (D.N.J. July 30, 2008) (internal

quotation omitted)). As set forth below, this Court has both subject matter and personal jurisdiction over this action.

      i.      *The Court has subject-matter jurisdiction over Defendants.*

As to subject-matter jurisdiction, the Court has diversity jurisdiction under 28 U.S.C. § 1332. (*See* Compl. at ¶ 5.) To establish diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), "the party asserting jurisdiction must show that there is complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000*." Schneller ex rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 292 (3d Cir. 2010). "A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015). "[T]he citizenship of an LLC is determined by the citizenship of its members." *Id*. And "[a] natural person is deemed to be a citizen of the state where he is domiciled." *Id*.

Here, DIW is a Delaware corporation with its principal place of business in New Jersey. (*See* Compl. ¶ 1.) Defendant Major Resorts is a Florida limited liability company. (*Id*. at ¶ 2.) Upon information and belief, Patel is the only constituent member of Major Resorts, and is a citizen of Florida. (*Id*. at ¶ 3.) The amount in controversy exceeds $75,000. (*Id*. at ¶ 4.) Thus, the Court has subject-matter jurisdiction over this action.

      ii.      *The Court has personal jurisdiction over Defendants.*

As for personal jurisdiction, it is well-established that contractual forum selection clauses provide a valid basis for personal jurisdiction in New Jersey. *See Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 10 (1972) (holding that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"); *see also In Re Diaz Contracting, Inc*., 817 F.2d 1047 (3d Cir. 1987) (following Bremen and declaring the Bremen holding to be in accord with New Jersey law). Similarly, where

a party executes a guaranty for a contract in which a forum selection clause exists, that party is also subject to the terms of the forum selection clause. *See Shelter Systems Groups Corp. v. Lanni Builders, Inc.*, 263 N.J. Super 373, 375 (App. Div. 1993).

In this case, Major Resorts consented to jurisdiction in this district through the License Agreement, and Patel consented through the Guaranty. (*See* Compl. ¶¶ 6-7.) "[P]arties can consent to the jurisdiction . . . of any particular court." *Hewlett-Packard Fin. Servs. Co. v. New Testament Baptist Church*, No. 2:18-CV-10230-MCA-SCM, 2019 U.S. Dist. LEXIS 136285, *9-10 (D.N.J. Aug. 13, 2019). Section 17.6.3 of the License Agreement provides as follows:

> You [Major Resorts] consent and waive your objection to the non-exclusive, personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey, and the United States District Court for the District of New Jersey for all cases and controversies under this [License] Agreement or between [DIW] and you [Major Resorts].

(Compl. at ¶ 6.) The Guaranty, which Patel signed, provides that Patel "acknowledge[s] that Section 17 of the [License] Agreement, including Remedies, Venue and Dispute Resolution, and WAIVER OF JURY TRIAL, applies to this Guaranty." *Id*. at 88. Thus, the Court has personal jurisdiction over both Major Resorts and Patel.

### B.  There Is Sufficient Basis To Enter Final Judgment By Default Against Defendants

Once the threshold issue of jurisdiction is met, the Court must analyze three factors to determine whether it has a sufficient basis to enter final judgment by default against Defendants. First, it must determine whether Defendants were properly served. Next, it must determine whether a sufficient cause of action was asserted by plaintiff. Finally, it must analyze whether default judgment is a proper remedy. *See Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008); *see also Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc*., No. 11-624 (JBS/JS), 2011 U.S. Dist. LEXIS 115142, *5 (D.N.J. Oct. 5, 2011).

As set forth below, DIW has met each of the criteria necessary for the Court to find a sufficient basis to enter final judgment by default against Defendants.

### i.  Defendants were properly served.

Federal Rule of Civil Procedure 4(e) provides four methods for effecting service in a district court: (1) personal service upon the individual; (2) leaving a copy at the individual's dwelling or place of abode with someone of a suitable age who resides there; (3) delivering the summons and complaint to the party's legal agent; or (4) serving the defendant in accordance with the state laws where the district court sits or where service is made. Fed. R. Civ. P. 4(e). Further, under Federal Rule of Civil Procedure 4(h)(1)(A), a limited liability company may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual." Accordingly, DIW may serve Major Resorts and Patel in accordance with the Federal Rules of Civil Procedure, Florida law for Major Resorts, Florida law for Patel, or New Jersey law. Fed. R. Civ. P. 4(e)(1).

Here, there is sufficient proof of service on Defendants. (See ECF No 7), Summons Returned Executed. Service of the Summons and Complaint having been effectuated with respect to Major Resorts by personal service of its registered agent in Orlando, Florida, on March 10, 2023. (*Id.*) Service of the Summons and Complaint having been effectuated with respect to Patel by personal service in Orlando, Florida, on March 10, 2023. (*Id.*) Since Defendants were personally served pursuant to Fed. R. Civ. P. 4(e)(1), there is sufficient proof of service as to all Defendants.

### ii.  DIW has established a sufficient cause of action against Defendants.

To establish liability for breach of contract, DIW bears the burden of showing (1) that the parties entered into a valid contract, (2) breach of the obligations under that contract occurred, and (3) damages accrued as a result of the breach. *See Murphy v. Implicito*, 392 N.J. Super. 245, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007); *see also Coyle v. Englander's*, 199 N.J. Super. 212, 223 (App. Div. 1985).

Here, the Complaint states a cause of action for breach of contract by alleging that (1) Defendants entered into the valid License Agreement and Guaranty with DIW, (2) Defendants breached the License Agreement and Guaranty when Major Resorts transferred the Facility to a third party without prior consent from DIW, and (3) DIW suffered damages as a result of Defendants' breach, in particular its failure to operate the Facility, pay outstanding Recurring Fees, and pay liquidated damages. (*See* Compl. ¶¶ 9-23; *see also* Affidavit of Kendra Mallet ("Mallet Aff.") ¶¶ 3-17.) In light of the pleadings and the principle that factual allegations in the complaint are treated as conceded by the Defendants, DIW has established a sufficient cause of action against Defendants. *See DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005).

### iii.  Default Judgment is an appropriate remedy.

To determine whether granting default judgment is proper, the Court must make factual findings as to: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

Default judgment is proper in this matter. First, there is no evidence in the record for Defendants to claim a meritorious defense. DIW provided ample evidence that Defendants entered into, and then breached, the unambiguous terms of the License Agreement and Guaranty. (*See* Compl. ¶¶ 9-23; *see also* Mallet Aff. ¶¶ 3-17.) Second, DIW has been prejudiced by Defendants' failure to answer because DIW has incurred additional costs, has been unable to advance the prosecution of its lawsuit, and has been delayed in receiving relief, which was due and owing. *See Days Inns Worldwide, Inc. v. 5 Star, Inc.*, No. 09-1009 (WHW), 2012 U.S. Dist. LEXIS 51426, at *12 (D.N.J. Apr. 11, 2012); *Newman v. Axiom Worldwide*, No. 06-5564 (WHW), 2010 U.S. Dist. LEXIS 53731, at *14 (D.N.J. June 2, 2010). Third, where, as here, Defendants have failed to

respond, there is a presumption of culpability. *See Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc*., No. 11-624 (JBS/JS), 2011 U.S. Dist. LEXIS 115142, *9-10 (D.N.J. Oct. 5, 2011). Based on the foregoing, default judgment is a proper remedy and should be granted.

### C.  DIW Is Entitled to Damages

DIW's damages should be awarded by the Court as such damages are calculated pursuant to the mutually agreed upon License Agreement and Guaranty and are supported by proper documentation. *See Days Inns Worldwide, Inc.*, No. CIV. 09-1009 WHW, 2012 WL 1232340, at *5; *see also Ramada Worldwide, Inc. v. NPR Hosp., Inc*., No. 06-4966 (WHW), 2008 U.S. Dist. LEXIS 3261, at **12-14 (D.N.J. Jan. 16, 2008).

### i.  The Recurring Fees Claim.

The outstanding Recurring Fees DIW seeks in its Motion for Default Judgment are computed pursuant to mutually agreed-upon formulas set forth in section 7, section 18.1, and Schedule C of the License Agreement. (*See* Compl. ¶ 10, Exhibit A, § 7 and Schedule C, Exhibit B, § 5; *see also* Mallet Aff. at ¶ 18 and Exhibit E attached thereto, Itemized Statement); *Ramada Worldwide, Inc. v. ERS Invs., Inc*., 07-1095 (WHW), 2008 U.S. Dist. LEXIS 3268, at *18 (D.N.J. Jan. 16, 2008). The itemized statement submitted by DIW supports and sets forth in detail its claim for outstanding Recurring Fees in the amount of $60,214.20 as of June 23, 2023.[3] (Mallet Aff. at ¶ 18 and Exhibit E.)

DIW is entitled to interest on its Recurring Fees claim. State law governs the availability of prejudgment interest on state law claims. *Mid-Jersey Bank v. Fidelity-Mortgage Investors*, 518 F.2d 640, 645 (3d Cir. 1975; see also Utica Mut. Ins. Co. v. DiDonato, 187 N.J. Super. 30, 43 (App.

---

[3] The current amount of outstanding Recurring Fees is less than the amount demanded in the Complaint because DIW removed any charges that post-dated the month in which Defendants transferred the Facility to a third party without prior consent from DIW.

Div. 1982) (allowance of prejudgment interest in a commercial case may be determined by a provision in the contract). The License Agreement specifically provides in section 7.3 that interest would accrue at the rate of 1.5% per month on all payments that became past due under the License Agreement. (*See* Mallett Aff., at ¶ 6, Exhibit A, § 7.3) *see also Utica Mut. Ins. Co. v. DiDonato*, 187 N.J. Super. 30, 43 (App. Div. 1982) (allowance of prejudgment interest in a commercial case may be determined by a provision in the contract).

        *ii.   The Liquidated Damages Claim.*

Reasonable liquidated damage clauses between commercial parties, in contexts similar to this case, are presumptively valid, and the burden is on the party opposing enforcement of the clause to demonstrate otherwise. *MetLife v. Washington Ave. Asscs., L.P.,* 159 N.J. 484, 496 (1999); *Central Steel Drum Co. v. Gold Cooperage, Inc*., 200 N.J. Super. 251, 265, certif. denied, 101 N.J. 303 (1985), overruled on other grounds, *Kutzin v. Pirnie*, 124 N.J. 500 (1991). Indeed, New Jersey law favors provisions in agreements that fix specified amounts of damages in the event of a breach. *See D.H.M. Indus., Inc. v. Central Port Warehouses, Inc*., 127 N.J. Super. 499 (App. Div. 1973), aff'd, 64 N.J. 548 (1974). A liquidated damages clause is valid where such a clause "constitutes a reasonable forecast of the provable injury resulting from the breach" and where harm "is incapable or very difficult of accurate estimate." *Wasserman's, Inc. v. Middletown*, 137 N.J. 238, 249 (1994).

Here, Defendants agreed, pursuant to section 12.1 of the License Agreement, that, in the event of a premature termination of the License Agreement, to pay liquidated damages to DIW. (*See* Compl. at ¶ 23; Mallet Aff. at ¶ 10.) Section 12.1 of the License Agreement specifically set liquidated damages for the Facility at "an amount equal to the sum of accrued Royalties and Basic Service Charges during the immediately preceding 24 full calendar months (or the number of months remaining in the unexpired Term (the "Ending Period") at the date of termination, whichever is less)." (*See* Mallet Aff. at ¶ 11.) Major Resorts had accrued royalties, marketing

contributions, and room sales charges during the 24 full calendar months immediately preceding termination in the amount of $18,832.25. (*See* Mallet Aff. at ¶ 25.) Accordingly, DIW seeks the amount of $18,832.25 in liquidated damages. (*See* Mallet Aff. at ¶ 26.)

Furthermore, DIW is entitled to interest on this amount calculated at the legal rate of interest of 1.5% per month in the amount of $9,382.90 from October 31, 2020 (30 days from the date of termination) to August 7, 2023 (the anticipated return date of this Motion), which amounts to 1010 days. The $9,382.90 figure is calculated by multiplying $18,832.25 by 18% per year, which equals $3,389.80 in interest per year. That amount is then divided by 365 days to equal $9.29 in interest per day. When the per diem interest of $9.29 is multiplied by 1010 days, the interest owed equals $9,382.90. (*See* Mallet Aff. at ¶ 27.) Based on the foregoing, DIW's request for $28,215.15 in liquidated damages, inclusive of interest, should be granted.

## IV.    CONCLUSION

For the foregoing reasons, DIW's Motion for Default Judgment (ECF No. 13) against Defendants is **GRANTED**. An appropriate Order accompanies this Opinion.

**DATED**: March 30, 2024

JULIEN XAVIER NEALS
United States District Judge